860 F.2d 1079
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harry HORTON, Plaintiff-Appellant,
v.
EDGCOMB METALS COMPANY, et al., Defendants-Appellees.
 No. 87-6262.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges; and DOUGLAS W. HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Harry Horton, appeals from a summary judgment which terminated his civil rights employment discrimination case which was filed after he was discharged by the defendant.[1] The district court concluded that plaintiff could not establish that his discharge was for other than a valid, nondiscriminatory reason.
 
 
 2
 Upon review of the record, we agree with the district court and affirm.
 
 I.
 
 3
 Horton is a black male who was employed by Edgcomb Metals Company (Edgcomb or the Company)[2] from November, 1973, until his discharge on February 22, 1984. This discharge was precipitated by an altercation that occurred between Horton and a white co-worker, Larry Hunt. On the day of the incident, Hunt and Horton were working in adjacent areas. Horton was hooking up steel coils so that they could be lifted and transported by an overhead crane. Hunt was working on a coil slitter. Hunt did not consider Horton to be a good worker and had requested that he be transferred to a different area. After observing Horton using what he believed to be improper hooking procedures, Hunt told Horton to use the proper method. It is undisputed that Hunt had no supervisory authority over Horton. Horton yelled back that he could not use the usual method due to cramped space, and the verbal exchange escalated and became profane. Hunt walked over to where Horton was working and a brief physical altercation followed which consisted primarily of the two grabbing each other and falling over a piece of equipment. Although, as is almost always the case in an altercation of this nature, the participants' versions of what occurred differ. However, we essentially credit Horton's claim that Hunt was the first to make physical contact.
 
 
 4
 Edgcomb had a plant rule which authorized discharge for a single violation involving a "physical altercation with any fellow employee." (Plant Rule No. 5). Both Hunt and Horton were charged with violating Plant Rule No. 5 and both were discharged. Horton was also charged with a violation of Plant Rule No. 26 which related to repeated violations of plant rules.[3] Although much of the evidence in the record relates to events that took place after the discharge, Horton is emphatic in emphasizing that he is claiming the discrimination took place when he was fired after an encounter in which he was not the aggressor.[4]
 
 
 5
 After discharge, both Hunt and Horton filed for unemployment benefits. Horton's application for benefits was denied on March 26, 1984, and Hunt's was denied on April 6, 1984. Both denials were appealed. Horton's appeal moved forward more quickly than Hunt's. A referee heard Horton's appeal on April 26, 1984. Defendant appeared in opposition. The referee upheld the previous denial of benefits to Horton in a written decision dated April 27, 1984. Horton again appealed. On May 24, 1984, Edgcomb filed a one-page letter in opposition to Horton's appeal. The referee's decision was reversed by the Unemployment Insurance Commission on August 6, 1984. The Company did not appeal further Horton's award of benefits.
 
 
 6
 Hunt's hearing before the referee was held on May 31, 1984. The defendant appeared in opposition. On June 1, 1984, the referee reversed the earlier decision and awarded benefits to Hunt. Edgcomb did not appeal the award.
 
 
 7
 Horton argues that because Hunt received his benefits one step earlier in the unemployment benefits appeal process this is somehow evidence of a discriminatory animus on the part of Edgcomb. We disagree. Both Hunt and Horton were granted benefits. Edgcomb opposed both awards but appealed neither one. Under such circumstances, we are unable to conclude that this amounts to an extension of the alleged disparate treatment.
 
 
 8
 Since both Horton and Hunt were union members, they also both filed grievances over their discharges. The grievances were denied at the first steps and both grievances went to arbitration pursuant to the provisions of the collective bargaining agreement. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 89, represented both Horton and Hunt at the arbitration hearing. Edgcomb appeared in opposition. No decision was made by the arbitrator for a period of over four months but, on October 10, 1984, he issued written opinions in which he concluded that Hunt should be restored to his job but that Horton's claim should be denied.
 
 
 9
 Horton argues that a neutral third party's action in reinstating a white employee but not him is evidence of Edgcomb's discriminatory practices. Horton's position on this issue is best captured in his own words:
 
 
 10
 The record of the arbitration proceeding shows that ... Edgcomb did not present evidence that Hunt had indicated a personal dislike for Horton and had requested to be moved out of Horton's assigned work area before the incident. Further, Horton's complete disciplinary record at Edgcomb Metals was presented to the arbitrator, but Hunt's complete disciplinary record, which was as bad or worse than Horton's, was not presented. Based on the presentations made by the company and the union, the arbitrator inexplicably concluded that Horton was the aggressor in the incident in order to justify his award.
 
 
 11
 (Appellant's Brief at 10).
 
 
 12
 We find little merit to any of Horton's contentions. Edgcomb appeared in opposition to both men's reinstatement. It was not Edgcomb's job to present evidence favorable to either man but, rather, this was the task of the union which represented them. At no time has Horton ever made a claim that the union breached its duty of fair representation. Horton's disciplinary record was relevant because he was discharged for repeated rules violations. Although Hunt was not discharged for rules violations, his disciplinary record was nonetheless put before the arbitrator by Edgcomb. Contrary to plaintiff's assertions, Hunt's record was not "as bad or worse than Horton's" as Hunt only had one disciplinary infraction in 1972. As for the arbitrator concluding that Horton was the aggressor in the fight, we can only say that that was the arbitrator's decision and, right or wrong, it is not before us.
 
 II.
 
 13
 It is obvious that the burr under the saddle here is that the plaintiff very genuinely feels that Hunt was the aggressor in the altercation and that if anyone should have been discharged it was Hunt. The problem with this argument is two-fold. First, Hunt and Horton were both discharged and, even if the discipline was excessive, it was not disparate. Second, and more importantly, Horton continually overlooks or downplays the fact that there were two grounds for his discharge and that, arguably, the Plant Rule No. 26 violation was the more serious of the two.
 
 
 14
 In considering the issues raised in this appeal, we emphasize that we have taken Horton's view of the facts wherever there is a legitimate ground for disagreement. We have not, however, credited his obvious factual misstatements, such as his reference to Hunt's disciplinary record being as bad or worse than his. We find nothing in the record which would indicate summary judgment was inappropriate. The recent Supreme Court decisions dealing with summary judgment, such as Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986), make it clear that when a summary judgment motion is under consideration, the whole record is before the judge. The party opposing a summary judgment cannot merely stand on his pleadings. Although the party moving for summary judgment bears the burden of proof, the Supreme Court made it clear in Celotex that burden did not include producing "evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." 477 U.S. at 325. In other words, when an employer has articulated a legitimate, non-discriminatory reason for a discharge, as is required by Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and uses that as a basis for a summary judgment motion, a plaintiff cannot defend by arguing he is entitled to his day in court to show pretext. He must, in opposition to the motion for summary judgment, demonstrate a reasonable likelihood of his being able to prove pretext. Horton failed to do this.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable Douglas W. Hillman, Chief Judge, United States District Court, Western District of Michigan, sitting by designation
 
 
 [1]
 Plaintiff had sought relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq., and 42 U.S.C. Sec. 1981
 
 
 [2]
 On June 29, 1984, the assets of Edgcomb Metals Company changed hands but, since the change does not affect this litigation, we shall refer to the defendant as Edgcomb throughout
 
 
 [3]
 Horton's disciplinary record at that point in time was as follows:
 8/28/76 Sent home for insubordination
11/4/77 Warning letter issued for tardiness and absenteeism
 6/9/78 Docked pay for being away from work station--sitting with another
 employee in parking lot
 9/8/78 Written reprimand for carelessness resulting in damage of machinery
 5/20/82 Sent home for refusing work order
11/15/82 Verbal warning for using telephone during working hours
 1/31/83 Suspended for one day and issued final warning for using abusive
 language toward supervisor
 4/13/83 Verbal warning for leaving plant on personal business without
 punching out
 1/23/84 Verbal warning for using Company telephone without permission
 
 
 [4]
 In his reply brief, Horton asserts that:
 [E]dgcomb charged him with fighting at a time when Edgcomb knew that Horton was the victim of a series of aggressive acts, including an assault by Larry Hunt, that after charging him with fighting, Edgcomb "stacked" additional charges unrelated to the incident of February 22, 1984 against him and in addition prosecuted the charges against Horton in an aggressive manner while being lenient in prosecuting the charges against Hunt.
 (Appellant's Reply Brief at 3).